IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-03247-RPM-KLM

SUSAN KUBERSKI,

      Plaintiff,

v.

CRED X DEBT RECOVERY, LLC,

      Defendant.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on **Plaintiff's Motion for Default Judgment** [Docket No. 8; Filed March 7, 2012] (the "Motion"). Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C., the Motion is referred to this Court for recommendation [#11]. Plaintiff seeks entry of default judgment against Defendant Cred X Debt Recovery, LLC. Pursuant to Fed. R. Civ. P. 55(a), the Clerk of Court entered default against Defendant on March 2, 2012 [#7]. Defendant has not responded to Plaintiff's Complaint or the present Motion. For the reasons set forth below, the Court recommends that the Motion be **GRANTED IN PART** as stated herein.

## I. BACKGROUND

**A.    Procedural History**

      Plaintiff initiated this lawsuit on December 12, 2011, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"). [#1]. Plaintiff obtained service on Defendant on

1

December 23, 2011.  [#4].  Defendant failed to respond to Plaintiff's Complaint.

A Scheduling/Planning Conference was set for April 9, 2012.  [#3].  The Court reset the Scheduling Conference for April 12, 2012, and ordered the parties to submit their proposed scheduling order no later than April 6, 2012.  [#5].  On March 1, 2012, Plaintiff filed a Motion for Entry of Default.  [#6].  The Clerk of Court entered default against Defendant on March 2, 2012.  [#7].  Plaintiff filed the Motion at issue on March 7, 2012.  [#8].  Defendant failed to file a response to the Motion at issue.  On March 8, 2012, Plaintiff filed a Motion to Vacate or in the Alternative Appear Telephonically at Scheduling Conference.  [#9].  The Court noted that "Defendant has not filed an answer or other response," and granted the Motion to Vacate the Scheduling Conference.  [#12].

## B.    Factual Allegations

Plaintiff allegedly accrued a debt on CashNet Account 12534014 "from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes."[1]  [#1] at 2.  The debt incurred was purchased by ACS, a "debt collector," from CashNet.  *Id.;* [#1-1].

On June 21, 2011, Plaintiff received an email from ACS which asserted that Plaintiff had a "Default Balance/Charged Off Balance" of $600 with a corresponding "Collection Fee of $200" regarding CashNet Account 12534014.  *Id.*  However, the email noted that Plaintiff had made a payment of $400 on June 21, 2011, and that the debt was considered "PAID IN FULL."  *Id.*  The email stated:

---

[1]    As further explained below, in making a recommendation on a motion for default judgment, the Court accepts the well-pled (as opposed to merely conclusory) allegations of Plaintiff's Complaint as true.  *Greenwich Ins. Co. v. Daniel Law Firm*, No. 07-cv-2445-LTB-MJW, 2008 WL 793606, at *1 (D. Colo. Mar. 22, 2008) (unpublished decision) (citation omitted).

> ACS purchased this debt with the intention of pursuing in legally.  Your last payment in the amount of $400.00 was received on 6/21/2011 and as of this date aforementioned Debt is considered PAID IN FULL and you are released of any obligation in regards to this debt.

*See id.* at 2-3*; see also* [#1-1].

On August 29, 2011, Plaintiff received an email from Defendant, a "debt collector," which contained an offer to accept partial payment of $700 ($450 due on August 24, 2011 and $250 due on August 31, 2011) to satisfy an alleged $800 debt regarding CashNet Account 12534014.  *See* [#1-2].[2]  The email stated, "[u]pon clearance of these funds your account will be considered satisfied in full and there will remain no further outstanding obligation."  *Id.*

On September 7, 2011, at 11:58 A.M., Plaintiff received a phone call and voicemail message from Defendant as follows:

> We have given you ample time to respond to our messages.  We feel that you are avoiding our calls.  The offices of CDR are going to need a return call.  We believe to have [sic] your banking information on file, and are going to need to ask you some questions before we process anything.  Failure to comply within 48 hours, we will have no choice but to make a decision on your behalf.  Our office number is 1-855-546-7300.  Again, 1-855-546-7300.

[#1] at 3.

On September 7, 2011, at 1:12 P.M., Plaintiff received a phone call and a "three second silent voicemail message" from Defendant.  *Id.* at 4.  On September 7, 2011, at 1:13 P.M., Plaintiff received a phone call and a "four second silent voicemail message" from Defendant.  *Id.*  On September 8, 2011, at 9:59 A.M., Plaintiff received a phone call and a

---

[2]  Based on Plaintiff's Complaint and the Motion at issue, it is unclear whether ACS and Defendant have a relationship with one another, aside from the fact that both contacted Plaintiff about Plaintiff's alleged debt on CashNet Account 12534014.

"four second silent voicemail message" from Defendant. *Id.* On September 8, 2011, at 5:56 P.M., Plaintiff received a phone call and a "four second silent voicemail message" from Defendant. *Id.*

Based on the emails and phone calls cited above, Plaintiff claims that Defendant violated the FDCPA. *See id.* at 5-7. More specifically, Plaintiff avers that Defendant violated: (1) "15 U.S.C. § 1692d(6) by failing to disclose Defendant's true corporate or business name in a telephone call to Plaintiff;" (2) "15 U.S.C. § 1692e(2)(A) by claiming Plaintiff owed an alleged debt of $800.00, and thus falsely representing the character, amount, or legal status of Plaintiff's debt;" (3) "15 U.S.C. § 1692e(10) by conveying a false sense of urgency in telephone calls to Plaintiff for the purpose of compelling Plaintiff to communicate with a debt collector and by claiming Plaintiff owed an alleged debt of $800.00, and thus using false representations and deceptive practices in connection with collection of an alleged debt from Plaintiff;" and (4) "15 U.S.C. § 1692e(11) by failing to notify Plaintiff during each collection contact that the communication was from a debt collector." *Id.*

## II. ANALYSIS

Pursuant to Fed. R. Civ. 55, default may enter against a party who fails to appear or otherwise defend a lawsuit. Here, entry of default was proper because Defendant failed to respond to Plaintiff's Complaint. After a proper entry of default, the Court must decide "whether the unchallenged facts create a legitimate basis for the entry of a judgment." *See Greenwich Ins. Co. v. Daniel Law Firm*, No. 07-cv-2445-LTB-MJW, 2008 WL 793606, at *1 (D. Colo. Mar. 22, 2008) (unpublished decision) (citations omitted). "[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted

4

to the 'sound judicial discretion' of the court." *Id.* at *2 (quoting *Cablevision of S. Conn., Ltd. P'ship v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001)).

## A.    Jurisdiction

In determining whether the entry of default judgment is warranted here, the Court must first consider whether it may exercise subject matter and personal jurisdiction over the parties and the dispute. *Dennis Garberg & Assocs. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997); *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202-03 (10th Cir. 1986). The Court must do so in consideration of the well-established law that "a judgment is void if the court that enters it lacks jurisdiction over either the subject matter of the action or the parties to the action." *Williams*, 802 F.2d at 1203.

### 1.    Subject Matter Jurisdiction

Plaintiff asserts that the Court has subject matter jurisdiction over this lawsuit based on federal question jurisdiction. *See* [#1] at 1. Federal question jurisdiction is governed by 28 U.S.C. § 1331, which provides in pertinent part that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Plaintiff's cause of action arises under 15 U.S.C. § 1692k(d) of the FDCPA, which is a federal statute. *Id.* Pursuant to 15 U.S.C. § 1692k(d), a plaintiff may pursue a civil cause of action "in any appropriate United States district court without regard to the amount in controversy . . . within one year from the date on which the violation occurs."

Plaintiff filed this action on December 12, 2011, which is less than one year after her receipt of the June 21, 2011 email, April 29, 2011 email, September 7, 2011 phone calls, and September 8, 2011 phone calls. *See* [#1] at 2-5. The action is therefore timely, and as Plaintiff brings the lawsuit pursuant to the FDCPA, the action arises pursuant to a federal

statute. Accordingly, the Court recommends finding that the Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331.

### 2. Personal Jurisdiction

Plaintiff bears the burden of establishing personal jurisdiction. *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). "[P]laintiff need only make a *prima facie* showing [of personal jurisdiction] if the motion [for default judgment] is decided only on the basis of the parties' affidavits and other written materials." *Dennis Garberg & Assocs., Inc.*, 115 F.3d at 773. As further explained below, in making a determination on a motion for default judgment, the Court accepts the well-pled allegations of Plaintiff's Complaint as true. However, this deferential pleading standard does not extend to statements of legal conclusion couched as fact. *Cf. Miller v. Kelly*, No. 10-cv-02132-CMA-KLM, 2010 WL 4684029, at *4 (D. Colo. Nov. 12, 2010) (citations omitted) ("While the Court accepts Plaintiff's well-pled allegations as true for the purpose of establishing personal jurisdiction over Defendant . . . It accords no deference to Plaintiff's conclusory and wholly unsupported allegations.").

The Court must first address the adequacy of service in making its determination as to whether it has personal jurisdiction over Defendant. *See United States v. Elsberg*, No. 08-cv-00522-MSK-KLM, 2010 WL 5177439, at *2 (D. Colo. Aug. 17, 2010). Plaintiff's Complaint identifies Defendant as a limited liability corporation ("LLC"). *See* [#1]. Therefore, the Court analyzes the adequacy of service in the context of Fed. R. Civ. P. 4(h), which establishes the requirements for service of a corporation, partnership, or association. Rule 4(h) provides that service on a corporation, partnership, or association is adequate if effected "by delivering a copy of the summons and of the complaint to an

6

officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . ." Fed. R. Civ. P. 4(h)(1)(B).  On January 3, 2012, Plaintiff filed a return of service demonstrating that a private process server personally delivered the summons to an officer of Defendant.  *See Summons* [#4].  Therefore, the Court recommends finding that Plaintiff has obtained adequate service and satisfied Fed. R. Civ. P. 4(h).

"Where a court possesses subject matter jurisdiction, . . . the parties may waive lack of personal jurisdiction."  *Gardner v. City & Cnty. of Denver*, 671 F. Supp. 713, 714 (D. Colo. 1987) (citation omitted).  Pursuant to Fed. R. Civ. P. 12(h)(1), a party may waive a defense premised on lack of personal jurisdiction by "failing to either: (i) make it by motion under this rule; or (ii) include it in a responsive pleading . . . ."  In the Complaint, Plaintiff's only assertion in support of an exercise of personal jurisdiction over Defendant is that Defendant conducts business in Colorado.[3]  [#1] at 2.  Despite the fact that Defendant did not raise personal jurisdiction as a defense, "[d]efects in personal jurisdiction . . . are not waived by default when a party fails to appear or to respond."  *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986) (citing *V.T.A., Inc. v Airco, Inc.*, 597 F.2d 220, 225 (10th Cir. 1979)).

> Thus, when entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.  In reviewing its personal jurisdiction, the court does not assert a personal defense of the parties; rather, the court exercises its responsibility to determine that it has the power to enter the default judgment.

*Id.* at 1203.

---

[3]  Plaintiff indicates that she resides in Colorado.  [#1] at 2.

Plaintiff makes no assertion about Defendant's place of residence; thus, the Court assumes that Defendant is not a Colorado resident for purposes of addressing personal jurisdiction over Defendant.  As a court of limited jurisdiction, this Court may only exercise jurisdiction over nonresident defendants if: (1) the long-arm statute of Colorado permits personal jurisdiction in this case; and (2) the exercise of personal jurisdiction in Colorado comports with the Due Process Clause of the United States Constitution.  *See Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).  The Supreme Court of Colorado interprets Colorado's long-arm statute "to confer the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions."  *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005).  Therefore, a due process analysis of jurisdiction in this case will also satisfy Colorado's long-arm statute.

The Due Process Clause requires that the Court conduct a two-step analysis of personal jurisdiction.  First, the Court must examine "whether the non-resident defendant has 'minimum contacts' with the forum state such that he should reasonably anticipate being haled into court there."  *TH Agric. & Nutrition, LLC v. Ace European Grp., Ltd.*, 488 F.3d 1282, 1287 (10th Cir. 2007) (citation and quotation mark omitted).  Second, if the defendant has sufficient contacts, the Court then asks "whether the court's exercise of jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice,'" that is, whether the exercise of jurisdiction is "reasonable" under the circumstances.  *Id.* (citation and some quotation marks omitted).

### a.    Minimum Contacts

The "minimum contacts" requirement of due process may be met in two ways,

through either the showing of the existence of general or specific jurisdiction. *Trierweiler*

*v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir.1996).

> The requisite minimum contacts exist if the non-resident defendant has continuous and systematic contacts with the forum state (general jurisdiction) or if the defendant (i) has purposefully directed activities at forum residents or otherwise acted to avail itself purposefully of the privilege of conducting activities there and (ii) the litigation results from alleged injuries that arise out of or relate to those activities (specific jurisdiction).

*Impact Prods. Inc. v. Impact Prods., LLC*, 341 F. Supp. 2d 1186, 1190 (D. Colo. 2004).

### i.    General Jurisdiction

General jurisdiction lies when the defendant's contacts with the forum state are so

"continuous and systematic" that the state may exercise personal jurisdiction over the

defendant, even if the suit is not related to the defendant's activities within the state.

*Trierweiler*, 90 F.3d at 1533 (citation omitted).  Here, there is no indication that Defendant

had continuous and systematic contact with the forum state, Colorado.  Defendant's

principal business mailing address appears to be either PO Box 1275, Orchard Park, NY

14127 or PO Box 157, North Tonawanda, NY 14120.[4]  [#1-2].  Additionally, Plaintiff's

private process server personally delivered the summons to an officer of Defendant at 4252

Ridge Lead, Ste 106, Amherst, NY 14226.  *See* [#4].  Plaintiff fails to provide any

allegations that would lead the Court to believe that Defendant's contacts with the forum

state of Colorado have been continuous and systematic.  Because Plaintiff has not

established that Defendant has "continuous and systematic general business contacts" with

---

[4] Defendant's email to Plaintiff dated August 29, 2011 provides a mailing address of PO Box 1275, Orchard Park, NY 14127.  However, Defendant's website provides a mailing address of PO Box 157, North Tonawanda, NY 14120. *Contact Us*, CRED X DEBT RECOVERY, LLC (June 19, 2012), http://www.credxdebtrecovery.com/contactus.html.

Colorado, an exercise of general personal jurisdiction over Defendant is improper. *See Benton v. Cameco*, 375 F.3d 1070, 1081 (10th Cir. 2004).

### ii. Specific Jurisdiction

To determine whether specific jurisdiction over Defendant is appropriate, the Court must examine whether: (1) Defendant purposefully directed its activities at Colorado or its residents or acted in some other way by which it purposefully availed itself of the benefits and protections of conducting business in Colorado, and (2) Plaintiff's claims arise out of or relate to Defendant's forum-related activities. *Impact Prods.*, 341 F. Supp. 2d at 1190.

Here, Plaintiff alleges that the following occurred in violation of the FDCPA: (1) on August 29, 2011, she received an email from Defendant; (2) on September 7, 2011, Plaintiff received a voicemail message from Defendant; (3) on September 7, 2011, Plaintiff received two phone calls from Defendant without corresponding voicemail messages; and (4) on September 8, 2011, Plaintiff received two phone calls from Defendant without corresponding voicemail messages. [#1] at 1-7. "It is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts." *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995) (citations omitted) (finding that "ten-to-twenty scattered contacts alleged in negotiating a contract" did not constitute minimum contacts). However, a single letter or phone call to a forum may be enough to meet due process standards as long as that single contact creates a substantial connection with the forum. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1418 (10th Cir. 1988) (citing *Burger King*, 471 U.S. at 475).

Defendant contacted Plaintiff in Colorado to collect a debt, an act which is regulated by the FDCPA, a federal statute. "Because [Defendant's] written correspondence is the

10

nucleus of the alleged wrongful conduct rather than just an ancillary contact with the forum, it was reasonable to have anticipated being hailed into [Colorado] court on claims based upon the [email]." *Russey v. Rankin*, 837 F. Supp. 1103, 1105 (D.N.M. 1993) (citations omitted) (holding that the District of New Mexico has personal jurisdiction over an out-of-state debt collector if the debt collector sends "one or more collection letters to a New Mexico resident when the cause of action is based upon that contact."). Furthermore, in the voicemail message that Defendant left for Plaintiff, Defendant stated: "We believe to have [sic] your banking information on file, and are going to need to ask you some questions before we process anything. Failure to comply within 48 hours we will have no choice but to make a decision on your behalf." [#1] at 3. In this message, Defendant threatened to take action against Plaintiff through her bank account. Plaintiff resides in Colorado, thus any action taken against Plaintiff would likely occur in Colorado. *Id.* at 2; *see Bryner v. Mancini, Welch & Geiger LLP*, No. 2:09-CV-1060 TS, 2010 WL 1418882 (D. Utah April 7, 2010) (unpublished decision) (noting the significance of the location of a defendant debt collector's threatened actions against a plaintiff when addressing personal jurisdiction over an out-of-state defendant). Therefore, allegations of sending an email and placing phone calls to Plaintiff, which allegedly violated the FDCPA, are "sufficient to show that Defendant purposefully directed [its] debt collection activities at [a] resident[] of [Colorado] and purposefully availed [itself] of the privilege of doing business in [Colorado] and that [P]laintiff's claims arose out of that Defendant's forum-related activities." *Wensauer v. Martorella*, No. CIV-08-467-F, 2008 WL 4131112 at *1 (W.D. Okla. Aug. 29, 2008) (holding that the Western District of Oklahoma had personal jurisdiction over an out-of-state debt collector because the debt collector allegedly sent letters to plaintiff in

11

Oklahoma in violation of the FDCPA).  Accordingly, the Court recommends finding that the Court may exercise specific jurisdiction over Defendant.

### b.     Traditional Notions of Fair Play and Substantial Justice

Additionally, exercising jurisdiction over Defendant does not "offend traditional notions of fair play and substantial justice."  *Impact Prods.*, 341 F. Supp. 2d at 1190. Regarding "traditional notions of fair play and substantial justice," courts consider:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states [or foreign nations] in furthering fundamental social policies.

*Dudnikov*, 514 F.3d at 1080 (citation omitted).

First, the Court's exercise of jurisdiction over Defendant would not create an undue burden on Defendant.  "[I]t is only in highly unusual cases that inconvenience will rise to a level of constitutional concern.  Certainly in this age of instant communication, and modern transportation, the burdens of litigating in a distant forum have lessened."  *Peay v. Bellsouth Med. Assistance Plan*, 205 F.3d 1206, 1212-13 (10th Cir. 2000) (citations, quotations, and footnote omitted).  Therefore, requiring Defendant to travel from New York to defend this action in Colorado would not create an undue burden.

Second, "[s]tates have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors."  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1096 (10th Cir.1998).  Although Defendant likely sent the alleged email and made the alleged phone calls from New York, Plaintiff allegedly received them in Colorado. [#1] at 3-5.  Therefore, any injury to Plaintiff occurred in Colorado and any threatened injury was threatened to occur in Colorado.  Accordingly,

Colorado has an important interest in providing a forum for Plaintiff to seek redress for her injuries.

The third factor "hinges on whether the [p]laintiff may receive convenient and effective relief in another forum," *Benton*, 375 F.3d at 1079, and the fourth factor asks "whether the forum state is the most efficient place to litigate the dispute," *id.* at 1080 (quotations and citation omitted).  In this case, Plaintiff could receive effective, albeit less convenient, relief in New York.  However, Colorado is the most efficient forum to litigate this dispute because Plaintiff resides in Colorado, Plaintiff apparently received all communications from Defendant in Colorado, and the out-of-state Defendant has not responded to Plaintiff's Complaint or the present Motion.  Therefore, the third and fourth factors weigh in favor of exercising personal jurisdiction over Defendant in Colorado.

The fifth factor "focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other states or foreign nations." *Id.* (quotations and citations omitted).  The purposes of the FDCPA, a federal statute, are:

> to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

15 U.S.C. § 1692(e).  Additionally, 15 U.S.C. § 1692k(d) states that "[a]n action to enforce any liability created by this subchapter may be brought in any appropriate United States district court . . . ."  Plaintiff alleges that Defendant violated four provisions of the FDCPA. [#1] at 5-7.  Therefore, exercising personal jurisdiction over Defendant in the forum where Plaintiff resides and was allegedly injured furthers the policy interests of all states.  Accordingly, the Court recommends finding that exercising jurisdiction over Defendant does

not "offend traditional notions of fair play and substantial justice," and the Court may exercise personal jurisdiction over Defendant.

## B.    Default Judgment

As indicated above, entry of default pursuant to Fed. R. Civ. P. 55(a) was proper because Defendant has failed to respond to Plaintiff's Complaint.  The Court must now decide "whether the unchallenged facts create a legitimate basis for the entry of a judgment." *Greenwich Ins. Co.*, 2008 WL 793606 at *1 (citations omitted).  "'[D]efault judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party.  In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights.  The default judgment remedy serves as such a protection.'" *In re Rains*, 946 F.2d 731, 733-34 (10th Cir. 1991) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).

"[A] party is not entitled to a default judgment as of right; rather the entry of default judgment is entrusted to the 'sound judicial discretion' of the court." *Greenwich Ins. Co.*, 2008 WL 793606 at *2 (quoting *Cablevisions of S. Conn., Ltd. P'ship v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001)).  Where the complaint states an adequate legal basis for relief against a party in default, default judgment is appropriate. *Id.* (citing *Weft, Inc. v. G.C. Inv. Assocs.*, 430 F. Supp. 1138, 1143 (E.D.N.C. 1986)).

Upon review of a motion for default judgment, assuming default was properly entered, the moving party enjoys the benefit of deferential pleading interpretation.  The Court deems the well-pled facts (as opposed to merely conclusory statements) of the Complaint in this matter to be true. *Id.* at *1 (citing *Dundee Cement Co. v. Howard Pipe &*

14

*Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)).  The Court also accepts as undisputed any facts set forth by the moving party in affidavits and exhibits.  *Id.*

### 1.   Plaintiff's FDCPA Claims

All of Plaintiff's claims against Defendant in this case arise pursuant to the FDCPA. *See* [#1].  The FDCPA is designed to "eliminate abusive debt collection practices by debt collectors . . . and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  Specifically, Plaintiff alleges that Defendant's debt collection practices violated 15 U.S.C. §§ 1692d(6), 1692e(2)(A), 1692e(10), and 1692e(11).  [#1] at 5-7.  Accepting the well-pled allegations in the Complaint as true and for the reasons stated below, the Court recommends that default judgment be entered against Defendant on Plaintiff's claims for violations of 15 U.S.C. §§ 1692e(2)(A), 1692e(10), and 1692e(11).

### a.   15 U.S.C. § 1692d(6)

15 U.S.C. § 1692d prohibits debt collectors from utilizing collection practices of which "the natural consequence . . . is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d(6) specifically prohibits "the placement of telephone calls without meaningful disclosure of the caller's identity." Although the Court deems the well-pleaded facts of the Complaint to be true, the Court finds that Plaintiff has not established a violation of 15 U.S.C. § 1692d(6).

The FDCPA defines "communication" as the "conveying of information regarding a debt directly or indirectly to any person through any medium."  15 U.S.C. § 1692a(2). Therefore, a voicemail message qualifies as a "communication" within the meaning of the FDCPA.  *Doshay v. Global Credit Collection Corp.*, 796 F. Supp. 2d 1301, 1304 (D. Colo.

15

2011).  Further, "[Section] 1692d(6) requires a debt collector to disclose its company name in a voicemail left for a consumer."  *Torres v. ProCollect, Inc.*, --- F. Supp. 2d ----, 2012 WL 1969280, *2 (D. Colo. June 1, 2012).

Plaintiff alleges that Defendant called Plaintiff five times in two days.  [#1] at 3-5. Following Defendant's first call on September 7, 2011, Defendant left a voicemail message. *Id.* at 3.  Following the other four calls, Defendant failed to leave a voicemail message.  *Id.* at 4-5.  In the voicemail message following Defendant's first call, Plaintiff alleges that the caller stated that "[t]he offices of CDR are going to need a return call . . . Our office number is 1-855-546-7300."  *Id.* at 3.  In this message, the caller identified the debt collection company, "CDR," but failed to identify his or her name.  However, "[a] caller's name (and certainly not a caller's alias) has no real 'meaning' to a consumer," and 15 U.S.C. § 1692d(6) only requires disclosure of the debt collection company.  *Torres*, 2012 WL 1969280 at *2.  Therefore, Defendant's single voicemail message does not violate 15 U.S.C. § 1692d(6).

Plaintiff alleges that Defendant called Plaintiff four other times without leaving a voicemail message.  [#1] at 4-5.  Plaintiff contends that this failure to leave messages also violates 15 U.S.C. § 1692d(6).  *Id.* at 5 (citing *Langdon v. Credit Mgmt., LP*, No. C 09-3286 WRW, 2010 WL 3341860 (N.D. Cal. Feb. 24, 2010)).  In *Langdon*, the court held that if a "defendant calls plaintiff and hangs up the phone, common sense dictates that defendant has not provided meaningful disclosure [of its identity]," and therefore violates 15 U.S.C. § 1692d(6).  2010 WL 3341860 at *2.  However, a District Court in the Tenth Circuit has held that calling without leaving a voicemail message does not violate 15 U.S.C. § 1692d(6) because this is not the "harassing, oppressive, or abusive" conduct that 15 U.S.C. § 1692d

16

prohibits. *Udell v. Kansas Counselors, Inc.*, 313 F. Supp. 2d 1135, 1144 (D. Kan. 2004). In *Udell*, instead of relying solely on "common sense," the court analyzed 15 U.S.C. § 1692d(6) "in conjunction with the entirety of § 1692d." *Id.* at 1143 (citing *U.S. Nat'l Bank v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993) ("Statutory construction is a holistic endeavor, and, at a minimum, must account for a statute's full text . . . and subject matter.")).

The rationale of *Udell* is persuasive.  The fact that Plaintiff alleges that Defendant made the calls where no message was left suggests that Plaintiff identified Defendant's phone number.  Therefore, it appears that Defendant "did not attempt to block [P]laintiff's caller identification system" or "hide its identity." *Id.* at 1444.  On this record, Plaintiff has not established that Defendant placed telephone calls without meaningful disclosure of its identity.  Accordingly, the Court recommends that default judgment should not be entered against Defendant on Plaintiff's claim for a violation of 15 U.S.C. § 1692d(6).

### b.    15 U.S.C. § 1692e(2)(A)

15 U.S.C. § 1692e prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e(2)(A) specifically prohibits the false representation of "the character, amount, or legal status of any debt."  Because the Court deems the well-pleaded facts of the Complaint to be true, the Court finds that Plaintiff has established that Defendant violated 15 U.S.C. § 1692e(2)(A), on the basis that Defendant falsely represented the "character, amount, or legal status of Plaintiff's debt."  [#1] at 6.  Plaintiff alleges that ACS "purchased account # 12534014 from Cashnet" and confirmed that Plaintiff's debt was considered "PAID IN FULL." *Id.* at 3-4; *see also* [#1-1].  Although Defendant's legal connection to the

17

CashNet debt is unclear, Defendant's communications with Plaintiff were clearly related to the same CashNet account.  Accepting these facts as true, Defendant misrepresented the legal status of Plaintiff's debt by contending that Plaintiff owed a debt, when Plaintiff's debt was already "PAID IN FULL."  Accordingly, the Court recommends that default judgment be entered against Defendant on Plaintiff's claim for violation of 15 U.S.C. § 1692e(2)(A).

### c.  15 U.S.C. § 1692e(10)

15 U.S.C. § 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  Because the Court deems the well-pleaded facts of the Complaint to be true, the Court finds that Plaintiff has established that Defendant violated 15 U.S.C. § 1692e(10). Plaintiff alleges that Defendant conveyed "a false sense of urgency in telephone calls to Plaintiff for the purpose of compelling Plaintiff to communicate with a debt collector and by claiming Plaintiff owed an alleged debt of $800.00, and thus us[ed] false representations and deceptive practices in connection with collection of an alleged debt from Plaintiff." [#1] at 7.  As stated above, accepting these facts as true, Defendant misrepresented the legal status of Plaintiff's debt by contending that Plaintiff owed a debt, when Plaintiff's debt was already "PAID IN FULL."  In Defendant's alleged September 7, 2011 voicemail message, Defendant stated "we have your banking information on file, and are going to need to ask you some questions before we process anything."  *Id.* at 3.  Therefore, it appears that Defendant made misrepresentations to "collect or attempt to collect any debt or to obtain information concerning [Plaintiff]."  Accordingly, the Court recommends that default judgment be entered against Defendant on Plaintiff's claim for violation of 15 U.S.C. § 1692e(10).

### d.    15 U.S.C. § 1692e(11)

15 U.S.C. § 1692e(11) prohibits:

[t]he failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

Because the Court deems the well-pleaded facts of the Complaint to be true, the Court finds that Plaintiff has established that Defendant violated 15 U.S.C. § 1692e(11), on the basis that Defendant failed "to notify Plaintiff during each collection contact that the communication was from a debt collector." [#1] at 7.

Defendant's initial communication with Plaintiff was Defendant's email dated August 29, 2011. *Id.* at 3; [#1-2]. The email was sent on what appears to be Defendant's letterhead and includes Defendant's name and contact information. [#1-2]. Additionally, the email stated, "[t]his is an attempt to collect a debt, any information will be used solely for that purpose." *Id.* Therefore, Defendant's initial communication does not violate 15 U.S.C. § 1692e(11).

The same holds true regarding Plaintiff's allegations that Defendant called Plaintiff four times without leaving a voicemail message. *Id.* at 4-5. "The FDCPA defines 'communication' as the 'conveying of information regarding a debt directly or indirectly to any person through any medium.'" *Doshay*, 796 F. Supp. 2d at 1304 (citing 15 U.S.C. § 1692a(2)). When Defendant placed unanswered phone calls and did not leave voicemail messages, Defendant did not convey any "information regarding a debt." Therefore, these calls were not a form of "communication." In any event, as the Court previously described,

19

it appears that Defendant "did not attempt to block [P]laintiff's caller identification system" or "hide its identity," thus Defendant's phone calls without corresponding voicemail messages do not violate 15 U.S.C. § 1692e(11).   *See Udell*, 313 F. Supp. 2d at 1444. Therefore, the failure to leave voicemail messages does not violate 15 U.S.C. § 1692e(11).

However, in Defendant's sole voicemail message, Plaintiff alleges that the caller stated, "[t]he offices of CDR are going to need a return call . . . Our office number is 1-855-546-7300."  [#1] at 3.  In this message, the caller identified the debt collection company as "CDR," but failed to disclose "that the communication is from a debt collector."  Therefore, Defendant's voicemail message violates 15 U.S.C. § 1692e(11), and default judgment should be entered against Defendant on this claim.

**2.     Damages**

In addition to finding that Plaintiff has a legal basis for relief, default judgment cannot be entered until the amount of damages has been ascertained.  *See Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984).  A default judgment for money damages must be supported by proof.  *Klapprott v. United States*, 335 U.S. 601, 611-12 (1949).  This requirement ensures that a plaintiff is not awarded more in damages than can be supported by actual evidence.  *See id.*

Pursuant to Fed. R. Civ. P. 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Further, "[a]lthough upon default the factual allegations of a complaint relating to liability are taken as true, those allegations relating to the amount of damages suffered ordinarily are not."  *Dundee Cement Co. v. Howard Pipe & Concrete Prods. Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).  In her Motion, Plaintiff requests entry of default judgment in the amounts of $1,000.00 in statutory

damages and $2,969.95 in attorney's fees and costs.  [#8].  The Court addresses each in turn.

### a.    Statutory Damages

The FDCPA sets a statutory maximum amount of damages at $1,000 per proceeding.  15 U.S.C. § 1692k(a)(2)(A); *see also Wright v. Fin. Servs. of Norwalk*, 22 F.3d 647, 650-52 (6th Cir. 1994); *Harper v. Better Bus. Servs. Inc.*, 961 F.2d 1562, 1563 (11th Cir. 1992).  Thus, regardless of whether Plaintiff establishes a single violation or several violations of the FDCPA, the amount of statutory damages remains the same.  *See Harper*, 961 F.2d at 1563.  "All that is required for an award of statutory damages is proof that the statute was violated, although a court must then exercise its discretion to determine how much to award, up to the $1,000.00 ceiling."  *Savino v. Computer Credit Inc.*, 164 F.3d 81, 86 (2nd Cir. 1998) (citing *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997)).  Thus, a determination that Defendant has committed one violation of the FDCPA is sufficient for the Court to find in favor of Plaintiff as to statutory damages.  *Santacruz v. Stanley & Assoc., LLC*, 10-cv-00623-CMA-CBS, 2011 WL 1043338, at *7 (D. Colo. Mar. 17, 2011).

Pursuant to 15 U.S.C. § 1692k(b)(1), in determining the amount of statutory damages in an FDCPA action, the Court must consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."  *See also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1609 (2010) (the court "must" consider the provisions of Section 1692k(b) in awarding statutory "additional damages"); *Jackson v. Diversified Collection Servs., Inc.*, No. 09-cv-00680-WDM-BNB, 2010 WL 1931013 (D. Colo. May 13, 2010) (evaluating a request for increased statutory damages pursuant to

Section 1692k(b)(1)).  As stated herein, the Court finds that Defendant violated three provisions of the FDCPA.  In light of these violations and Defendant's failure to respond to Plaintiff's Complaint, the Court recommends finding that the nature and willfulness of Defendant's noncompliance with the FDCPA justifies an award of $1,000 in statutory damages against Defendant.[5]

### b.    Attorneys' Fees and Costs

The FDCPA prescribes that a successful party is entitled to "the costs of the action, together with a reasonable attorney's fee as determined by the court."  15 U.S.C. § 1692k(a)(3).  To determine a reasonable fee award, the Court must conduct a lodestar calculation as set forth in *Hensley v. Eckerhart*, 641 U.S. 424, 433 (1983).  *See Anchondo v. Anderson, Crenshaw & Assocs., LLC*, 616 F.3d 1098, 1102 (10th Cir. 2002).  A lodestar calculation requires multiplying the number of attorney hours expended to resolve an issue or perform a task by a reasonable hourly billing rate.  *Hensley*, 641 U.S. at 433.  To determine the number of hours expended, the Court reviews counsel's billing entries to ensure that counsel exercised proper billing judgment.  *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998) (internal quotation marks omitted); *id.* at 1251 ("The district court is not bound by the opinions of the parties regarding the reasonableness of the time they spent on the litigation.").  Once the Court determines

---

[5]  Plaintiff alleges that Defendant sent Plaintiff an email dated August 29, 2011 and left Plaintiff one voicemail message on September 7, 2011 containing misrepresentations and false statements in an attempt to induce Plaintiff into paying Defendant an alleged debt that Plaintiff had already "PAID IN FULL." [#1] at 3-5.  Additionally, Plaintiff received two unanswered calls each day from Defendant without corresponding voicemail messages on September 7, 2011 and September 8, 2011.  Therefore, Defendant called Plaintiff a total of five times in two days.  *Id.*  The Court believes that contacting Plaintiff six times in nine days demonstrates persistent and intentional conduct.

the lodestar, it may "adjust the lodestar upward or downward to account for the particularities" of the work performed. *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997).

"Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Case*, 157 F.3d at 1250. "In determining what is a reasonable time in which to perform a given task," an attorney submitting billing entries should consider the following factors: (1) the complexity of the case; (2) the number of reasonable strategies pursued; (3) the responses necessitated by the maneuvering of the other side; and (4) "the potential duplication of services" caused by the presence of multiple attorneys when one would suffice. *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983). The burden is on the party requesting fees to prove that its counsel exercised proper billing judgment. *Case*, 157 F.3d at 1250 ("Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks.").

Here, Plaintiff requests $2,500.00 in attorneys' fees. [#8] at 1. Plaintiff alleges that she "has incurred more then [sic] $3,500.00 in attorney's fees to date. Exercising billing discretion Plaintiff seeks attorney's fees in the amount of two thousand five hundred dollars." *Id.* However, Plaintiff failed to submit any billing records to demonstrate to the Court that the hours billed and the hourly rate charged are reasonable, as required by D.C.COLO.LCivR 54.3.

The FDCPA does not establish "an affirmative duty on attorneys to submit documentation when requesting attorney fees. Rather, the statute permits the *court* to set

fees that are reasonable." *Martinez v. Albuquerque Collection Servs., Inc.*, 867 F. Supp. 1495, 1509 (D.N.M. 1994) (emphasis in original).  Therefore, the Court has the discretion to set a "reasonable hourly rate" based on the "prevailing market rates in the relevant community." *Obenauf v. Frontier Fin. Grp., Inc.*, 785 F. Supp. 2d 1188, 1207 (D.N.M. 2011) (citations and quotations omitted).  Here, Plaintiff's attorney has prepared and filed: 1) an eight-page "Complaint;" 2) a two-page "Application for Entry of Default" with a two-page "Affidavit of Craig J. Ehrlich;" 3) a two-page "Motion for Default Judgment" with an identical copy of the previously mentioned two-page "Affidavit of Craig J. Ehrlich;" and 4) a three-page "Motion to Vacate or in the Alternative Appear Telephonically at Scheduling Conference." *See* [##1, 6, 8, 9].  In these filings, Plaintiff asserts that Defendant violated four provisions of the FDCPA and supports her claims by citing the FDCPA and one case. *See id.*  Therefore, in light of: (1) the straight-forward nature of the case; (2) the fact that Plaintiff's claims are based on the FDCPA; and (3) Defendant's failure to respond to any of Plaintiff's filings, the Court recommends awarding $1,500.00 of the Plaintiff's requested attorneys' fees. *Ramos*, 713 F.2d at 554.  The Court recommends the lodestar calculation of $1,500.00 after determining that $250.00 is a reasonable hourly billing rate, and six hours is a reasonable number of attorney hours expended on the pleadings at issue.

Additionally, Plaintiff requests $469.95 in costs. [#8] at 1.  Although Plaintiff provides a receipt for court filing fees of $350.00, Plaintiff fails to submit records to demonstrate to the Court that the remaining $119.95 constitutes recoverable costs.  [#1-4].  Therefore, the Court recommends awarding $350.00 of the Plaintiff's requested costs, and rejecting the remainder of the costs sought.

## III.  RECOMMENDATION

Accordingly, the Court respectfully **RECOMMENDS** that Plaintiff's Motion be **GRANTED IN PART**, and that default judgment be entered in favor of Plaintiff and against Defendant in the amount of $2,850.00.

Pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.   A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P.  72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. CDOC*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.   *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  July 2, 2012

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge